**UNITED STATES of America,**
**Appellee,**

**v.**

**Joseph R. FIORE, Appellant.**

**No. 906, Docket 72-1414.**

United States Court of Appeals, Second Circuit.

Argued July 18, 1972.

Decided Sept. 27, 1972.

Kristin Booth Glen, New York City, for appellant.

Raymond J. Dearie, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., David G. Trager, L. Kevin Sheridan, Asst. U. S. Attys., of counsel), for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant's principal contention on appeal is that his sentence of 20 years without parole, for selling heroin, is illegal. He also argues insufficiency of the evidence and that collateral use of wiretaps pursuant to an allegedly unconstitutional statute requires reversal of his conviction on Counts One and Three (sale of heroin contrary to 21 U.S.C. § 174) and Two and Four (sale of heroin not in a tax paid stamped package in violation of 26 U.S.C. § 4704(a)).[1] Appellant had previously been convicted in the Southern District of New York for the illegal transportation of heroin.

Appellant's insufficiency of the evidence argument is readily disposed of, since it is premised upon our giving no weight whatsoever to the testimony of a paid government informant who testified to sales to him by appellant of 20.78 grams of 98.4 per cent pure heroin on December 3, 1969, and 19.95 grams of 86.5 per cent pure heroin on January 12, 1970, each sale for $1,000. While the sales were not directly observed by any special agents of the Bureau of Narcotics and Dangerous Drugs, the informant, one Bennett, was searched by them immediately before he entered and immediately after he left appellant's store, "The Little 5 & 10," in Astoria, Queens; in each instance he went into the store with the cash and no heroin and returned with no cash and the above-mentioned drug, the first time in a box of Esquire shoe polish and the second time in a taped-up "Newsweek"

---

[1] Appellant was sentenced to 20 years' imprisonment on Counts One and Three and 5 years' imprisonment on Counts Two and Four, all sentences concurrent with the sentence on Count One. This was his second conviction in connection with the instant charges, the first having been reversed and remanded in United States v. Fiore, 443 F.2d 112 (2d Cir. 1971).

magazine handed him by appellant. In the case of the first sale, the agents observed appellant in the store speaking to the informant, although the transaction itself was not observed.

■ Appellant argues that the evidence of his possession[2] was circumstantial only and that we should adopt the Fifth Circuit rule that the inferences to be drawn from that circumstantial evidence must preclude every reasonable hypothesis which is consistent with innocence. United States v. Davis, 443 F.2d 560, 564 (5th Cir.), cert. denied, 404 U.S. 945, 92 S.Ct. 298, 30 L. Ed.2d 260 (1971); United States v. Casey, 428 F.2d 229, 231 (5th Cir.), cert. denied, 400 U.S. 839, 91 S.Ct. 78, 27 L. Ed.2d 73 (1970); see Whaley v. United States, 362 F.2d 938, 939 (9th Cir. 1966). However, this court has consistently rejected the reasoning of these cases, most recently in United States v. Taylor, 464 F.2d 240, 244 (2d Cir. 1972), which regarded Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), as repudiating the Fifth Circuit view. See also United States v. Siragusa, 450 F.2d 592, 596 (2d Cir. 1971); United States v. Grunberger, 431 F.2d 1062, 1066 (2d Cir. 1970). Moreover, in this case, in addition to the circumstantial evidence deriving from the agents' observations of Bennett's entering the store only with cash and leaving only with heroin, there was the direct testimonial evidence of Bennett, the informant, himself. Regardless of any unreliability stemming from the informant's own participation in the drug traffic, or his refusal to testify at appellant's first trial (which resulted in the reversal referred to in note 1, supra), the jury was entitled to believe him and his testimony is not to be treated as "virtually useless" in the words of appellant's brief, or totally to be disregarded in weighing the sufficiency of the evidence. Thus, in any event, we do not have a case calling for a determination of the applicability of the Fifth Circuit standard because the case is not one solely of circumstantial evidence.

■ Appellant makes three arguments concerning his sentence, and were a panel of this court facing them for the first time, resolution would prove difficult. The first is that the statute in effect at the time of the offense, 26 U.S.C. § 7237, providing a minimum of 5 years and no parole, was repealed and that accordingly he should have been sentenced under the Act of 1970,[3] 21 U.S.C. § 841. This contention—and by implication appellant's subsidiary equal protection argument[4]—has been disposed of by previous decisions of this court. United States v. Ross, 464 F.2d 376, 378 (2d Cir., 1972); United States v. Singleton, 460 F.2d 1148 (2d Cir., 1972); United States v. Fiotto, 454 F.2d 252, 254–255 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).[5]

2. 21 U.S.C. § 174 requires, inter alia, proof of receipt, concealment, purchase or sale and possession. See Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (statutory inferences of unlawful possession and of knowledge of illegal source upheld).

3. The Comprehensive Drug Abuse Prevention and Control Act of 1970, 42 U.S.C. §§ 257 et seq., 2688 et seq., 21 U.S.C. § 801 et seq. (effective May 1, 1971). Appellant was sentenced on January 21, 1972, for crimes occurring in 1969 and 1970.

4. That as opposed to persons convicted for crimes after the effective date of the repealing act, who are eligible for parole after serving one-third of their sentences, appellant is denied equal protection of the law. Cf. Furman v. Georgia, 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (opinion of White, J.) 408 U.S. 240, 92 S.Ct. 2727 (opinion of Douglas, J.) (1972).

5. The Supreme Court has granted certiorari in United States v. Bradley, 455 F.2d 1181 (1st Cir.) cert. granted, 407 U.S. 908, 92 S.Ct. 2438, 32 L.Ed.2d 682 (1972), and presumably will answer appellant's argument, for which there is support in the Ninth Circuit, United States v. Stephens, 449 F.2d 103 (9th Cir. 1971), one way or the other.

But appellant does not rest his sentence arguments on this point alone. Counsel contends that a 20-year sentence without parole—subjecting appellant to at least 14 years [6] in prison—is violative of the eighth amendment as cruel and unusual punishment.[7] This argument, too, has been dealt with adversely by this court in the past. United States v. Ross, *supra*, 464 F.2d at 381; United States v. Lozaw, 427 F.2d 911, 917 (2d Cir. 1970). *See also* United States v. Drotar, 416 F.2d 914, 916 (5th Cir. 1969); Sperling v. Willingham, 353 F.2d 6, 7 (7th Cir. 1965), cert. denied, 384 U.S. 962, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966); Stewart v. United States, 325 F.2d 745, 746 (8th Cir.), cert. denied, 377 U.S. 937, 84 S.Ct. 1344, 12 L.Ed.2d 301 (1964). Appellant argues that by repealing the no parole provisions of old § 7237 of Title 26, Congress indicated that the older statute was arbitrary, excessive and, since serving no useful purpose, unnecessary—even for a second offender like appellant. But while appellant would find some solace in the language of the opinions of Mr. Justice Brennan [8] and Mr. Justice Marshall [9] in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the other opinions there supporting the majority holding, as well as the dissenting opinions, give no support to appellant's

---

6. The 20-year sentence would be reduced by credit for time already served, 18 U.S.C. § 3568, and for good time credits earned, 18 U.S.C. § 4161.

7. Appellant's counsel was successful in persuading two members of this court sitting en banc that Martin Sostre's solitary confinement was cruel and unusual punishment. See Sostre v. McGinnis, 442 F.2d 178, 206, 207 (2d Cir. 1971) (en banc), cert. denied, Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

8. In determining whether a punishment comports with human dignity, we are aided also by a second principle inherent in the Clause—that the State must not arbitrarily inflict a severe punishment. This principle derives from the notion that the State does not respect human dignity when, without reason, it inflicts upon some people a severe punishment that it does not inflict upon others. Indeed, the very words "cruel and unusual punishments" imply condemnation of the arbitrary infliction of severe punishments.
408 U.S. at 274, 92 S.Ct. at 2744.
The final principle inherent in the Clause is that a severe punishment must not be excessive. A punishment is excessive under this principle if it is unnecessary: The infliction of a severe punishment by the State cannot comport with human dignity when it is nothing more than the pointless infliction of suffering. If there is a significantly less severe punishment adequate to achieve the purposes for which the punishment is inflicted, cf. Robinson v. California, *supra*, [370 U.S. 660] at 666, [82 S.Ct. 1420, 8 L.Ed.2d 758];

id., at 677 [, 82 S.Ct. 1417] (Douglas, J., concurring); Trop v. Dulles, *supra*, [356 U.S. 86] at 114 [79 S.Ct. 590, 2 L.Ed.2d 630] (Brennan, J., concurring), the punishment inflicted is unnecessary and therefore excessive.
408 U.S. at 279, 92 S.Ct. at 2747.

9. Perhaps the most important principle in analyzing "cruel and unusual" punishment questions is one that is reiterated again and again in the prior opinions of the Court; *i. e.*, the cruel and unusual language "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Thus, a penalty which was permissible at one time in our Nation's history is not necessarily permissible today.
408 U.S. at 329, 92 S.Ct. at 2772.
Third, a penalty may be cruel and unusual because it is excessive and serves no valid legislative purpose. Weems v. United States, *supra*. The decisions previously discussed are replete with assertions that one of the primary functions of the cruel and unusual punishments clause is to prevent excessive or unnecessary penalties, *e. g.*, Wilkerson v. Utah, 99 U.S., [130] at 134 [25 L.Ed. 345]; O'Neil v. Vermont, 144 U.S., [323,] at (339–340, 12 S.Ct. 693, 36 L.Ed. 450) (Field, J., dissenting); Weems v. United States, 217 U.S., [349] at 381, [30 S.Ct. 544, 54 L.Ed. 793]; Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 [, 67 S.Ct. 374, 91 L.Ed. 422] (1947); these punishments are unconstitutional even though popular sentiment may favor them.
408 U.S. at 331, 92 S.Ct. at 2773.

claim. . In any event, in light of this court's previous decisions, appellant's argument will have to be addressed to other ears than our own.[10]

◼ Appellant also attacks the sentence on the ground that the criteria used by the sentencing judge were insufficient since he said that "his disposition would be to impose the same sentence" that was imposed at the time of appellant's first trial on. the present charges. The judge added, the complaint runs, "Certainly that is a ceiling on what I can do, and if there is to be an appeal, and there is a possibility of a third trial, I would be limiting the discretion of the next judge by doing anything less."[11] The court also commented to counsel that counsel "could not commit the defendant at this moment" to not taking an appeal. In connection with taking an appeal, due process requires that a defendant be freed of apprehension of retaliatory motivation on the part of the sentencing judge. *Cf.* North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The sentencing judge here, however, as the sentencing minutes go on to make plain, was concerned with the seriousness of the offense:

And while Juries aren't infallible, there has been a Jury verdict and we are dealing with a non-addict heroin seller. I think that is one of the most serious crimes there is.

· · · · · ·

Well, I am inclined to think that the 20 is fair. I gave 30 a while ago on a second offender where it was a two

kilo sale. These are smaller sales, but the heroin still goes out in the street to corrupt other people's children.

· · · · · ·

I'm sorry, Mr. Fiore, to be harsh, but I am doing what I think is proper.

◼ While the sentencing judge's reference to an appeal and possibly a second retrial was unfortunate, we take the view that it was not the determining factor in the imposition of the 20-year sentence. Rather, he was sentencing a heroin dealer as at the very least a second offender[12] to a harsh sentence because the crime was "one of the most serious crimes there is," one that "corrupt[s] other people's children."

◼ On the basis of United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa., 1972), appellant argues that Title III of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510-20, is unconstitutional and that since an in-court voice identification (made by Agent Byrne in connection with a tape recording of a December 4, 1969, conversation introduced into evidence) rested in part upon Byrne's subsequently hearing appellant's voice on conversations monitored under the Act,[13] the conviction was invalid, presumably because the exhibit was improperly admitted. The evidence was, however, that Byrne's identification had an independent origin including four telephone calls in November and December of 1969 on which occasions the informant Bennett was talking to appellant and Byrne was either sharing the receiver or listening with a stethoscope-like receiver. Moreover, the informant also identi-

10. Of course, if United States v. Bradley, note 5 *supra*, is reversed on the grant of certiorari, the eighth amendment question may not be reached.

11. This was apparently a reference to the doctrine established by North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), that following conviction on a retrial sentence may not be greater than on the first trial, so as to free a defendant of any apprehension of retaliatory motivation on the part of the sentencing judge.

12. The judge noted that the presentence report revealed that appellant was in prison on a state narcotics charge from 1957 to 1965 and that in fact he had two state convictions and served the sentences simultaneously.

13. Appellant's telephone was tapped pursuant to a court order issued under the Act, for a period after the offenses of which appellant was convicted.

fied appellant's voice on the December 4, 1969, tape recording and there is no suggestion that the foundation for his identification was tainted by illegal wiretaps. So saying, we do not reach the question of the constitutionality of Title III here.

Judgment affirmed.